# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MICHAEL DWAYNE DURHAM,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09CV00012 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **DAVID L. HORNER,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*H. Ronnie Montgomery and C. Adam Kinser, Montgomery Kinser Law Offices, P.C., Jonesville, Virginia, and Sheldon Ingram, Norton, Virginia, for Plaintiff; Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, Virginia, for Defendant.*

In this § 1983 case, the defendant police officer initiated a criminal prosecution against the plaintiff, who he believed was a drug trafficker. In fact, the plaintiff was innocent but was confused with the real perpetrator. Based upon the facts, I find that the defendant police officer is entitled to qualified immunity from the plaintiff's suit for money damages and grant summary judgment in his favor.

I

David L. Horner, the defendant, was a Wise County, Virginia, deputy sheriff and a member of the Regional Drug Task Force. In late 2005, as part of his duties, he arranged three drug buys from a suspected drug trafficker, using confidential

informants ("CIs").[1] After the first buy, on November 29, 2005, a CI identified the plaintiff as the seller. Horner then gave the plaintiff's name to other members of the Regional Drug Task Force, and through some method undisclosed in the record, was provided with the plaintiff's Social Security number and a post office box address in Big Stone Gap, a town located in Wise County.[2]

Based on this information supplied to him, Horner then went online and, using law enforcement data bases, found that the plaintiff Michael Dwayne Durham had lived in Big Stone Gap from 1982 through 1999 and had more recent Tennessee addresses. He had also been charged with drug offenses in Mississippi in 2003.

Horner was also told by the CI that a Jeep vehicle had been seen by the CI near the site of the first drug buy, with a "stolen" Tennessee license plate, number unknown. (Horner Dep. 19.)

There were two additional drug buys by the CI from the same suspect, on December 3 and December 16, 2005. Horner obtained a laboratory analysis of all of the drugs purchased and requested that Michael Dwayne Durham be indicted.

---

[1] There were apparently more than one CI involved in some fashion, although the CI Tracking Sheets prepared by Horner at the time indicate one and the same CI for each drug purchase.

[2] The plaintiff asserts in his brief that Horner supplied the suspect's Social Security number to the Regional Drug Task Force (Pl.'s Resp. 3), but Horner has submitted his affidavit that he received the Social Security number from the Task Force (Horner Aff. 1) and there is no evidence to the contrary in the record before me.

Another member of the Regional Drug Task Force appeared before a state grand jury on May 31, 2006, and testified as to the offenses. Three separate indictments were then returned by the grand jury against the plaintiff, charging him with a felony offense for each of the drug sales.

The plaintiff lives in Memphis, Tennessee, and in November of 2006, he received a letter from the Social Security Administration advising him that his disability benefits were being withheld because there were outstanding criminal charges against him in Wise County, Virginia. A friend called the Wise County Sheriff's Department on his behalf. He was told that Durham should turn himself in and "they would straighten it out." (Durham Dep. 15.) He surrendered to the Memphis police and was transported to Wise County, where he was jailed on the charges.

Eventually, in March of 2007, after the plaintiff had remained in custody for over 90 days because of his inability to make bond, his attorney convinced the Wise County prosecutor that he had the wrong person, based on telephone records that showed that the plaintiff was not in Wise County on the dates of the drug sales. The charges were dropped and the plaintiff was released. This civil suit followed.

After his initial involvement as outlined above, Deputy Sheriff Horner did not participate further in the prosecution. He only learned of the plaintiff's jailing and the

apparent mistake in identity when he was served with the suit papers in this civil case. Horner, who by this time was chief of police of the Town of Big Stone Gap, then looked into the matter further and by happenstance learned of a person living in Wise County named Michael <u>David</u> Durham. A photograph of Michael David Durham was obtained and the CI confirmed that he was the person who had been the seller of the drugs in question.

In his Second Amended Complaint, the plaintiff asserts a claim under 42 U.S.C.A. § 1983 (West 2003) that Horner violated his rights under the Fourth Amendment to the Constitution by initiating the prosecution against him without probable cause, thus leading to his arrest.[3] *See Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181-82 (4th Cir. 1996) (recognizing such a claim under § 1983). He also asserts a state law claim for malicious prosecution under the court's supplemental jurisdiction. *See* 28 U.S.C.A. § 1367(a) (West 2006). Horner has filed a Motion for Summary Judgment, contending, among other things, that he is entitled to qualified immunity. The motion has been briefed and argued and is ripe for decision.[4]

---

[3] The plaintiff also initially sued the prosecuting attorney and the sheriff of Wise County. Those defendants have been previously dismissed.

[4] Horner filed an earlier Motion for Summary Judgment, also asserting that he was entitled to qualified immunity. The magistrate judge recommended that the motion be

II

Summary judgment should be entered when there is "no genuine issue as to any material fact," given the parties' burdens of proof at trial. Fed. R. Civ. P. 56(c)(2); *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Police officers, like other government officials, are immune from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Consequently, qualified immunity attaches when the government actor's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

---

granted, but Senior District Judge Glen M. Williams disagreed, and denied the motion. (Opinion and Order, Jan. 10, 2010.) The case was thereafter reassigned to me and after discovery, the present motion was filed. The earlier decision does not preclude revisiting this issue, particularly since additional evidence has been presented that calls into question the basis for the earlier denial of summary judgment. *See Tang v. State of R.I., Dep't of Elderly Affairs*, 163 F.3d 7, 11 (1st Cir. 1998) (recognizing that ruling of one trial judge does not preclude another trial judge reconsidering interlocutory ruling).

(1982). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Moreover, qualified immunity is "an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

On the plaintiff's behalf, it is argued that a reasonable officer in Horner's position would not have initiated the prosecution because there were facts known to him that indicated that the plaintiff was not the drug seller.

In the first place, the plaintiff points out that there is evidence that Horner knew of a difference in age between the person fingered by the CI and the person whose Social Security number was obtained by the Regional Drug Task Force. The Internet data obtained by Horner showed that the plaintiff was born in 1960, making him age 45 in 2005. The real suspect, Michael David Durham, is now about 60.[5] Horner testified in his deposition that the CIs told him that the drug seller was an "old man."

---

[5] In his deposition in June of 2010, Horner was asked by plaintiff's counsel concerning the real suspect, Michael David Durham, "How old is he?" to which Horner replied, "He is approximately, I don't really know for sure, he's approximately 60." (Horner Dep. 26.) The plaintiff contends that the suspect was 60 years old in 2005 (Pl.'s Resp. 7), but as the defendant points out, this evidence more properly means that the real drug trafficker was 55 years old in 2005 (Def.'s Reply 11). In fact, plaintiff's counsel later asked Horner, "Okay, so he's a 60-year-old individual living in Stickleyville?" to which Horner replied, "Yeah, that's correct." (Horner Dep. 27.) There is no other evidence in the record before me as to the real suspect's age.

(Horner Dep. 26.) He explained that this information did not indicate to him that the 45-year-old Michael Dwayne Durham was not the drug seller, since in his experience peoples' estimates of age are often inaccurate.[6]

This argument constitutes a thin reed to support the plaintiff's opposition to qualified immunity. The fact that a 45-year-old individual had been referred to as an "old man" by those who had seen him does not balance out the other information pointing to the plaintiff as the suspect. Perhaps the suspect looked older than his years. Perhaps the CI believed, as many young people do, that anyone approaching middle age is "old."

It is also argued that Horner should have confirmed the suspect's identity by obtaining a photograph of the plaintiff and showing it to the CI. But Horner testified that he attempted to do so, but could not find a photograph of Michael Dwayne Durham, the person he thought was the suspect. (Horner Dep. 23.) There is no evidence in the record that a photograph of the plaintiff was reasonably available to Horner.[7]

---

[6] Defense counsel contends that Horner meant that the CIs first told him that the real suspect, Michael David Durham, was an "old man" after the present suit was filed, when Horner first learned of the mistaken identity, and was investigating its cause. However, viewing the evidence in the light most favorable to the plaintiff, as I must, I will assume that the CIs told Horner in 2005 that the drug seller was an "old man."

[7] The plaintiff has submitted an affidavit of John Woodward, a former investigator with the Wise County Sheriff's Department. The defendant objects to the use of this

Finally, the plaintiff argues that Horner should have obtained the Tennessee license number of the vehicle reported by the CI, which would have shown that it did not belong to the plaintiff. But Horner testified that he was told by the CI that the tag was stolen, so that information would not have been determative of the plaintiff's involvement. Moreover, there was no indication from the CI that the vehicle belonged to the drug seller, but only that it was parked nearby.

Qualified immunity does not protect only those police officers who are never mistaken. To have probable cause does not mean to have proof sufficient to convict. It is clear from the present record that Deputy Sheriff Horner acted in good faith in accord with the information available to him. That his investigation led to the very unfortunate circumstances portrayed in this case is highly regrettable, but under the law, these facts do not permit the officer to be subjected to a trial for money damages.

---

affidavit, since Woodward was timely disclosed as an expert as required by Federal Rule of Civil Procedure 26(a)(2). I agree. In any event, however, the affidavit does not produce a genuine issue of material fact, since Woodward only states that in his experience as a police investigator, he "routinely obtained pictures of suspects and targets" through departments of motor vehicles in Virginia and other states. (Woodward Aff. ¶ 3.) Woodward does not state that he would not have initiated a prosecution without such a photograph, or that Horner violated any recognized police procedure by doing so. There is no evidence that Horner could have obtained a picture of the plaintiff in 2005 from any available source. According to counsel's representation at oral argument, after the present suit was filed, the plaintiff did produce a photograph, but there is no evidence of where it came from.

III

The plaintiff also asserts a state law claim for malicious prosecution. While under Virginia law, malice may be inferred from a lack of probable cause, *Lee v. Southland Corp.*, 244 S.E.2d 756, 759 (Va. 1978), I find based on the undisputed facts that Horner did have probable cause to initiate the prosecution of the plaintiff.[8]

"Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Gaut v. Pyles*, 181 S.E.2d 645, 647 (Va. 1971) (internal quotation marks and citation omitted).

The evidence in this case shows, without contradiction, that the CI whose report Horner relied upon had given reliable information in the past. Horner passed the name of the suspect on to the Regional Drug Task Force, which suppled him with the plaintiff's Social Security number. That Social Security number was in fact correct for the name supplied by the CI. Other information about the plaintiff — his prior residency in Wise County and his prior drug charges in another state — supported the belief that he was the drug seller. As I have earlier explained, the fact

---

[8] While I have the discretion to dismiss without prejudice these pendent state claims once the federal claims are dismissed, 28 U.S.C.A. § 1367(c)(3) (West 2006), I find it appropriate to rule on them since the case has been fully developed and judicial economy would not be served by further litigation in state court, *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

that Horner was unable to obtain a photograph of the plaintiff and the vague reference to the suspect's age did not under the circumstances materially detract from the reasonable belief that the plaintiff was guilty.

In his Second Amended Complaint, the plaintiff also asserts a state law claim for "gross negligence." (Second Am. Compl. ¶ 29.) Virginia law recognizes no such cause of action against police officers for conducting investigations. *Lewis v. McDorman*, 820 F. Supp. 1001, 1008 (W.D. Va. 1992).

IV

For these reasons, the defendant's Motion for Summary Judgment will be granted and final judgment entered in his favor. A separate judgment will enter forthwith.

DATED: December 7, 2010

/s/ JAMES P. JONES
United States District Judge